IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-360-FL

| | | |
|---|---|---|
| RODNEY H. WITHERSPOON, and <br> SALIMAH HANAN EL-AMIN, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | ORDER |
| STATE EMPLOYEES' CREDIT UNION, | ) <br> ) <br> ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (DE 15). The issues raised are ripe for ruling. For the following reasons, the motion is granted.

**STATEMENT OF THE CASE**

Plaintiffs, wife and husband, commenced this action September 8, 2021, asserting a race discrimination claim under 42 U.S.C. § 1981 against defendant, their bank, for conduct related to defendant allegedly stating that plaintiffs did not have sufficient funds in their account to cover a certain check. Plaintiffs seek compensatory and punitive damages.

Defendant answered, with direct reliance upon certain attachments including 1) plaintiffs' deposition testimony, from a related state court case, and that of Doug Harvey ("Harvey"), a detective with the Atlantic Beach Police Department; 2) a depiction of the "Account Specific Alerts" that may be requested for accounts with defendant; and 3) defendant's rules and regulations

for its "Share and Deposit Account" product. The instant motion for judgment on the pleadings soon followed.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.

Plaintiffs, Rodney Witherspoon ("Witherspoon") and Salimah El-Amin ("El-Amin"), are African-American individuals who reside in Raleigh, North Carolina. Plaintiffs began in 2016 to plan their wedding in Atlantic Beach, North Carolina. Plaintiff El-Amin toured Celebration Cottage, a wedding venue in Atlantic Beach, with an adjoined beach house called Pierless Too, owned by David Bradley ("Bradley") and staffed by Denise Greer ("Greer"), chef and catering manager for Celebration Cottage. Bradley also owned a restaurant called the Island Grill managed by Aimee Scott ("Scott").

Between April and June 2016, plaintiffs made a $2000.00 deposit with Celebration Cottage related to their wedding celebration at the venue scheduled for the weekend of September 9, 2017. Plaintiffs mailed a $12,933.10 check to Celebration Cottage for wedding costs on September 1, 2017, with the assumption 140 guests planned on attending.

However, as plaintiffs arrived September 5, 2017, in Atlantic Beach to prepare for the wedding, it became clear that Hurricane Irma was heading for the North Carolina coast and would potentially make landfall in Atlantic Beach. Plaintiffs' wedding guests began to cancel, and North Carolina's Governor declared a state of emergency in preparation for the hurricane. In light of the developing situation, plaintiffs set up a meeting with Scott and Greer.

Plaintiff El-Amin, and her mother, met with Greer September 7, 2017. Greer represented there was nothing she could do about the reduced guest count and its relation to the per guest charges, although she would discuss that matter with Scott. Later that same day, plaintiff

Witherspoon, his father-in-law to be, Scott, and Greer met regarding the wedding and adjusting the guest count as it related to per guest charges. The meeting ended unsuccessfully, with Scott explaining that she would talk to Bradley about the rental of Celebration Cottage and that the $12,933.10 check had not yet been cashed.

At defendant's bank, the next morning, plaintiffs' check was marked "NSF," for non-sufficient funds, by an employee of defendant who was an acquaintance of Scott, Greer, and/or Bradley, although the check allegedly was never presented for payment or deposit. That same day, plaintiff Witherspoon and his future father-in-law met again with Scott and Greer. Plaintiff Witherspoon sought a reduction in charges given the hurricane "significantly reduc[ing] the guests that would attend" and the obsolescence of a tent rental for the venue. (Compl. ¶ 33). Scott represented she had visited defendant's bank to verify there were sufficient funds to cash the $12,933.10 check but was informed by defendant there were, in fact, insufficient funds in the account. Plaintiff Witherspoon countered that "any checks drawn on the[] SECU account would be paid," "that if funds were insufficient, [plaintiffs] would receive an alert," and "that the SECU account . . . was designed not to bounce any checks by allowing the transfer of funds [from] their other linked accounts." (Id. ¶¶ 37-38).

Scott was unconvinced, explaining she and her employer "had done everything they could" and that plaintiffs were "taking advantage" of them by "not honor[ing] the contract [they] signed," although Scott was unable to produce any contract. (Id. ¶ 39). Tempers began to flare, with Scott and Greer asserting that other couples had their weddings during hurricanes, insinuating something was "wrong" with plaintiffs, including that plaintiff Witherspoon was a "bully." (Id. ¶¶ 42-43).

In light of the refusal to reduce the charges and their perception of disrespectful behavior by Scott and Greer, plaintiffs canceled their wedding at the Celebration Cottage and did not hear

3

from Greer, Scott, or Bradley again. Plaintiffs stopped payment on the $12,933.10 check and changed to a new wedding venue over the course of 24 hours at significant cost. They were happily married on the beach September 9, 2017.

Without any communication or warning, plaintiff Witherspoon was arrested in his home on October 3, 2017, for felony obtaining property by false pretense and conspiracy to obtain property by false pretense. Plaintiff El-Amin learned that there was a warrant for her arrest for the same charges in addition to felony worthless check, causing her to surrender herself to the authorities. Plaintiffs were charged, by Harvey, who had communicated with Scott, Greer, and/or Bradley, with planning the wedding with the intent to defraud by saying they would pay for the wedding services but only paying a $500 deposit while taking advantage of all the benefits of the wedding venue. Plaintiffs aver they never used any service, drank any alcohol, or ate any food provided by the wedding venue.

Plaintiffs' careers and reputations were significantly harmed by the arrests and charges. Despite resistance by an assistant district attorney, personally associated with Scott, Greer, and/or Bradley, the charges eventually were dismissed.

**COURT'S DISCUSSION**

A.    Standard of Review

"After the pleadings are closed[,] . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto

4

Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); see, e.g., Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013); Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012).[1]

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.   Analysis

Plaintiffs assert that defendant violated 42 U.S.C. § 1981, specifically, by "stamping [plaintiffs'] check 'NSF' without giving them the benefit of an alert via the program that they are contractually entitled to as members," a decision allegedly animated by plaintiffs' race. (Compl. ¶ 81).

Section 1981 provides in relevant part, "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Thus, § 1981 "protects all persons from racial discrimination in making and enforcing contracts." Woods v. City of Greensboro, 855 F.3d 639, 645 (4th Cir. 2017). "To succeed on a § 1981 claim, a plaintiff must ultimately establish both that the defendant

---

[1] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022) (explaining that "a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements"). Such a claim requires plaintiff also show that his or her race was the "but for" cause of the interference with a contractual interest. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).

Here, "factual details" regarding defendant are sparse in plaintiffs' complaint. Details regarding defendant or its agents' knowledge of plaintiffs' "race are conspicuously absent." Nadendla, 24 F.4th at 305. Even assuming that the court could conclude that plaintiffs' complaint alleges facts supporting that plaintiffs were "treated differently" by defendant, they have not alleged anything beyond conclusion and speculation they were "treated differently because of [their] race." Lemon v. Myers Bigel, P.A., 985 F.3d 392, 394 (4th Cir. 2021). Taking the facts as pleaded as true and taking reasonable inferences in plaintiffs' favor, there is insufficient factual basis in the complaint plausibly to state that defendant interfered with plaintiffs' contractual interest on the basis of their race, which, on the complaint, was not even known to defendant or its employees.

In short, the court is "left with a sparse set of pleadings, incapable of stating a plausible claim that" plaintiffs' check would not have been marked NSF without sending them an alert "but for [their] race." Lemon, 985 F.3d at 400.[2] On defendant's motion for judgment on the pleadings, plaintiffs' § 1981 claim is dismissed without prejudice.

---

[2] To the extent plaintiffs attempt to raise new factual assertions through their memorandum in opposition to the instant motion, such allegations are not properly before the court, see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011), and, therefore, not considered. Moreover, those factual assertions further make implausible that defendant acted on the basis of race, where plaintiffs claim in briefing that the check was marked "NSF" on the direction of Harvey.

6

Additionally, and in the alternative, plaintiffs' § 1981 claim fails because the complaint does not plausibly allege that defendant interfered with their contractual interests.

The parties undisputedly have a contractual relationship. (Compl. ¶ 76; Answer ¶ 76). There is no dispute that the "Rules and Regulations" document attached to defendant's answer (DE 14-6) is an authentic copy of the document controlling that contractual relationship. (See Pls.' Resp. (DE 21) at 6 (relying on the document as providing the relevant contractual interests)). See generally Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) ("[The court] may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."). Similarly, plaintiffs rely on defendant's policy regarding "Another Chance Alerts" as integral to their complaint and their legal claim. (Compare Another Chance Alert Terms (DE 14-5) at 1, with Compl. ¶¶ 37, 77, 81). Plaintiffs have not disputed the authenticity of defendant's attached version of that policy (DE 14-5).

With those integral, undisputedly authentic documents in mind, the court considers plaintiffs' claim that defendant interfered with their contractual interests by stamping their check "NSF" without giving them the benefit of an "Another Chance Alert," which they aver they were contractually due. On the facts alleged in the complaint, plaintiffs were not contractually due an Another Chance Alert. Defendant sends out Another Chance Alerts when "an item[]" potentially is going to be "returned due to insufficient funds." (Another Chance Alert Terms (DE 14-5) at 1). Defendant "determines whether sufficient funds are available to pay an item after the item is received by" defendant as "presented for payment against [the] checking account." (Rules and Regulations (DE 14-6) at 20 (emphasis added)). The complaint alleges that their "check was never presented to [defendant] for payment," (Compl. ¶ 66), meaning there was never an item potentially

7

going to be returned due to insufficient funds as would warrant an Another Chance Alert. Thus, plaintiffs have failed to allege an essential element of their § 1981 claim, that defendant's alleged discrimination interfered with a contractual interest.

## CONCLUSION

Based on the foregoing, defendant's motion for judgment on the pleadings (DE 15) is GRANTED. Plaintiffs' complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted. The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of August, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

8

Case 5:21-cv-00360-FL   Document 22   Filed 08/29/22   Page 8 of 8